IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HERITAGE ALLIANCE, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:18-CV-939-RP |
| THE AMERICAN POLICY ROUNDTABLE, *d/b/a* OHIO ROUNDTABLE, | § § § § | |
| Defendant. | § § | |

## ORDER

Before the Court is are two motions to dismiss, one filed by Plaintiff Heritage Alliance ("Heritage"), (Dkt. 8), and the other filed by Defendant American Policy Roundtable ("APR"), (Dkt. 7). Having considered the parties' motions, the record, and the applicable law, the Court will grant both motions in part.

## I. BACKGROUND

This is an intellectual-property dispute between two nonprofits that publish voter guides. (Am. Compl., Dkt. 6, at 4–5). Heritage alleges as follows. In late 2007, it registered the domain name www.ivoterguide.com and launched a website at that domain that publishes voting records, donations, endorsements, and candidate surveys. (*Id.* at 4). In September 2008, Heritage began using the trademarks iVoterGuide and iVoterGuide.com. (*Id.*). Today the guide covers federal elections in every state, statewide elections in eleven states, and state legislative elections in seven. (*Id.*). The iVoterGuide website has been used by over a million voters, evaluates over 4,000 candidates, and has an email list numbering 100,000 recipients. (*Id.*).

APR, formed in 1980 to educate voters about elections, launched www.ivoters.com in 2003. (*Id.* at 5). The website provides an address-based candidate search and lists the "most watched" federal House and Senate races, along with links to candidate information for those races. (*Id.*). In

1

March 2016, APR registered the domain name www.ivotersguide.com, which simply reroutes the user to www.ivoters.com. (*Id.*).

In September 2018, APR sent a letter to Heritage explaining that they believed that Heritage's iVoterGuide mark infringed its iVoters mark. (N.D. Ohio Order, Dkt. 22-1, at 2). APR called Heritage to discuss the matter and later sent a formal cease-and-desist letter to Heritage in mid-October 2018. Heritage responded to that letter by suing APR in this Court on October 31, 2018, for cyberpiracy under 15 U.S.C. § 1125(d), alleging that www.ivotersguide.com was created simply to divert visitors from Heritage's website. (Orig. Compl., Dkt. 1).

After Heritage served APR in January 2019, APR simultaneously filed a motion to dismiss in this action, (Dkt. 5), and a complaint in a separate action against Heritage for trademark infringement in the United States District Court for the Northern District of Ohio. (Dkt. 22-1). In response to APR's motion to dismiss, Heritage amended its complaint to add federal- and state-law claims for trademark infringement and unfair competition on March 22, 2019. (Dkt. 6).

Before the Court now is APR's motion to dismiss Heritage's amended complaint under Federal Rule of Civil Procedure 12(b)(3) and 12(b)(6). (APR Mot., Dkt. 7). Not only does APR believe that Heritage has failed to state a claim, it also believes that venue is improper in this district under the first-to-file rule. (*Id.* at 1–2). Heritage, meanwhile, filed its own motion to dismiss, asking this Court to dismiss APR's action in the Northern District of Ohio or transfer it to this Court and consolidate the two cases. (Heritage Mot., Dkt. 8, at 6).

## II. DISCUSSION

"Courts in the Fifth Circuit generally follow a 'first-filed rule' in deciding which Court should maintain jurisdiction over claims that arise out of the same subject matter but are pressed in different suits." *Yeti Coolers, LLC v. Beavertail Prods., LLC*, 1-15-CV-415 RP, 2015 WL 4759297, at *1 (W.D. Tex. Aug. 12, 2015) (quoting *Igloo Prods. Corp. v. The Mounties, Inc.*, 735 F. Supp. 214, 217 (S.D.

Tex. 1990)). Because the first-to-file rule implicates this Court's jurisdiction, it will resolve that issue first before proceeding to APR's motion to dismiss under Rule 12(b)(6).

### A. First to File

Under the first-to-file rule, "federal courts may decline to hear a case when an earlier-filed case pending in a different federal court raises similar issues." *Hart v. Donostia LLC*, 290 F. Supp. 3d 627, 630 (W.D. Tex. 2018) (citing *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999)). The rule, which rests on principles of comity and sound judicial administration, is principally concerned with avoiding duplicative waste, rulings which trench on sister courts' authority, and piecemeal resolution of issues. *Cadle*, 174 F.3d at 603. "The rule does not require the cases to be identical." *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 678 (5th Cir. 2011). "The crucial inquiry is one of substantial overlap." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (citation omitted). If two actions substantially overlap on substantive issues, the cases "would be required to be consolidated in the jurisdiction first seized of the issues." *Id.* (quoting *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 n.6 (5th Cir. 1971)).

Factors relevant to substantial overlap include whether "the core issue" in each case is the same and whether "much of the proof adduced . . . would likely be identical." *Sweet Little Mexico Corp.*, 665 F.3d at 678. Courts also consider the extent to which the cases involve the same parties. *See Save Power*, 121 F.3d at 950–51. "Where the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Sweet Little Mexico Corp.*, 665 F.3d at 678.

APR admits that Heritage's trademark claim substantially overlaps with its own. (APR Mem., Dkt. 7-1, at 18). But APR argues that its suit is the first-filed of the two because Heritage's original complaint—filed four months before APR's action—asserted no claims for trademark infringement

3

or unfair competition, which first appear in the amended complaint that Heritage filed after APR began its Ohio suit. (*Id.* at 17). APR's theory is that Heritage's action could be first-filed based only on the cyberpiracy claim in its original complaint and that Heritage suit is not first-filed because its cyberpiracy claim does not substantially overlap with the trademark claims in APR's complaint. The question is whether APR's theory is correct.

But by admitting that its trademark claim substantially overlaps with Heritage's, APR concedes the question, for Heritage's trademark-infringement and cyberpiracy claims arise out of the same allegations and depend upon the resolution of common legal issues. As APR points out, both its trademark claim and Heritage's will "consider the issues of priority, distinctiveness, and the many factors related to a likelihood of confusion analysis." (*Id.* at 17). Both will consider evidence relevant to those issues, such as "use in commerce, similarity of the marks, [and] similarity of the goods and services at issue." (*Id.* at 17–18).

These examples of overlap between the parties' trademark claims also happen to be areas of overlap with Heritage's cyberpiracy claim, which is likewise a Lanham Act claim alleging that APR has used Heritage's iVoterGuide mark illegally. (*Compare* Orig. Pet., Dkt. 1, at 5 (alleging that APR intended to profit off of the iVoterGuide mark by creating www.ivotersguide.com), *with* Am. Compl., Dkt. 6, at 8–9 (alleging that APR infringed Heritage's iVoterGuide mark by using it in the sale of APR's own services, which include diverting traffic to its main website through www.ivotersguide.com)). Heritage's cyberpiracy and trademark claims will both require proof that the iVoterGuide mark is a "distinctive . . . mark entitled to protection." *Tex. Int'l Prop. Assoc. v. Hoerbiger Holding AG*, 624 F. Supp. 2d 582, 587 (N.D. Tex. 2009) (citation omitted) (listing the elements of an Anticybersquatting Consumer Protection Act (ACPA) claim); *see also Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009) (considering distinctiveness in analyzing the likelihood of confusion between two marks). Both claims will examine APR's intent in its alleged

4

use of the iVoterGuide mark. *See Tex. Int'l Prop. Assoc.*, 624 F. Supp. 2d at 587 (identifying a defendant's "bad faith intent to profit" from use of the plaintiff's mark as an ACPA-claim element); *Xtreme Lashes*, 576 F.3d at 227 (listing a defendant's intent as one of the digits of confusion). And both claims will examine the similarity between www.ivotersguide.com and the iVoterGuide mark. *See Tex. Int'l Prop. Assoc.*, 624 F. Supp. 2d at 587 (listing whether a defendant's domain name is "identical or confusingly similar" to the plaintiff's mark as another ACPA-claim element); *Xtreme Lashes*, 576 F.3d at 227 (listing a mark similarity as one of the digits of confusion). The parties to each action are the same, much of the evidence will be the same, and the core issues—which party's mark has priority, and whether the marks are confusingly similar—are the same. *See Sweet Little Mexico Corp.*, 665 F.3d at 678; *Save Power*, 121 F.3d at 950–51. The Court agrees with APR that its trademark claim substantially overlaps with Heritage's and finds that its trademark claim substantially overlaps with Heritage's ACPA claim for many of the same reasons. Indeed, the federal court in which APR filed suit reached the same conclusion. (*See* Order, Dkt. 22-1, at 4 (finding that Heritage's cyberpiracy claim and APR's trademark claim both involve the same parties and "the same fundamental issues")). Heritage's claim is the first-filed of the two.

"The court in which an action is first filed"—here, this one—"is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Save Power*, 121 F.3d at 948. This Court may therefore decide "whether the second suit filed must be dismissed, stayed or transferred and consolidated." *Cadle*, 174 F.3d at 606. The Court finds that judicial economy would be served by transferring the Ohio action to this Court and consolidating it with this action. But the Court is aware of no authority, and Heritage cites none, under which it may "dismiss the Ohio case." (Heritage Mot., Dkt. 8, at 6). The Court will therefore await the decision of its sister court in Ohio to dismiss or transfer this action.

## B. APR's Rule 12(b)(6) Motion

### 1. Legal Standards

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not

consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

2. Analysis

In its amended complaint, Heritage asserts claims against APR for: (1) cyberpiracy under the ACPA, 15 U.S.C. § 1125(d); (2) infringement of a registered mark under 15 U.S.C. § 1114; (3) unfair competition under 15 U.S.C. § 1125(a); (4) trademark infringement and unfair competition under Texas common law; and (5) unjust enrichment. (Am. Compl., Dkt. 6, at 8–9). APR asks the Court to dismiss each claim with prejudice. (APR Mem., Dkt. 7-1, at 7–16). The Court will address each in turn.

*a. Cyberpiracy*

Heritage alleges that APR's registration of the www.ivotersguide.com domain constitutes cyberpiracy under 15 U.S.C. § 1125(d). (Am. Compl., Dkt. 6, at 8). The relevant portion of that statute provides:

> (1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person
>
>> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>>
>> (ii) registers, traffics in, or uses a domain name that—
>>
>>> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
>>>
>>> (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
>>>
>>> (III) is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

7

15 U.S.C. § 1125(d)(1). According to Heritage, APR's ivotersguide.com website is confusingly similar to Heritage's iVoterGuide and iVoterGuide.com trademarks. (Am. Compl., Dkt. 6, at 5–6). To prevail on the merits of an ACPA claim, Heritage must show that: (1) its mark "is a distinctive or famous mark entitled to protection"; (2) APR's "domain names are identical or confusingly similar to" Heritage's marks; and (3) APR "registered the domain names with the bad faith intent to profit from them." *Tex. Int'l Prop. Assoc.*, 624 F. Supp. 2d at 587 (citation and internal quotation marks omitted).

According to APR, Heritage's cyberpiracy claim must be dismissed because www.ivotersguide.com is not confusingly similar to any mark entitled to protection. (APR Mem., Dkt. 7-1, at 8–11). APR argues that Heritage admitted in its complaint that the term "iVoterGuide" is not entitled to copyright protection. (*Id.* at 8). Regarding the word "iVoterGuide" alone, APR is correct. In registering the design trademark for its logo,[1] Heritage disclaimed a copyright interest in the word "IVOTERGUIDE" except as it is visually depicted in the company's logo. (USPTO Certificate, Dkt. 6-1, at 1). Having done so, Heritage cannot "claim exclusive rights to the disclaimed portion[ ]" of the logo—the word "iVoterGuide"—"apart from [its] use in the mark as a whole." *In re Wada*, 194 F.3d 1297, 1301 (Fed. Cir. 1999).

The question then becomes whether www.ivotersguide.com is confusingly similar to any Heritage mark that *is* entitled to protection. In its response, Heritage offers two candidates: the design trademark for its logo as a whole and www.ivoterguide.com. (Resp., Dkt. 9, at 4-5).[2] APR

---

[1] Heritage's logo consists of the word "iVoterGuide" enclosed in an ellipse, with the "V" stylized to resemble a check mark: ⬭iVoterGuide . (USPTO Certificate, Dkt. 6-1, at 1).

[2] APR argues that Heritage failed to allege that APR's domain name infringes either the logo mark or dotcom mark and that Heritage's response defends claims not alleged. (Reply, Dkt. 10, at 3). But Heritage alleges that APR's domain was created with the intent to profit from Heritage's "registered iVoterGuide mark," which can only refer to the logo mark. (Am. Compl., Dkt. 6, at 5). Heritage also alleges that APR's domain is likely to cause confusion with Heritage's dotcom mark. (*Id.* at 6).

disputes only whether these two marks are distinctive based on the allegations in Heritage's amended pleading. (Reply, Dkt. 10, at 3–6). The logo mark is registered, (USPTO Certificate, Dkt. 6-1); it is therefore presumed distinctive. *Nola Spice Designs, L.L.C. v. Haydel Enterp., Inc.*, 783 F.3d 527, 537 (5th Cir. 2015) (stating that a mark's registration with the PTO "is prima facie evidence that the marks are inherently distinctive" but that the opposing party may "rebut this presumption"). The dotcom mark is unregistered and, for the purposes of deciding APR's motion to dismiss, the Court assumes that it is not inherently distinctive. But a mark that is not inherently distinctive can become distinctive by developing secondary meaning. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000). Secondary meaning "occurs when, in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself." *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 476 (5th Cir. 2008) (cleaned up). Exclusive and continuous commercial use of a mark for over five years may be evidence of secondary meaning. *T-Mobile US, Inc. v. AIO Wireless LLC*, 991 F. Supp. 2d 888, 909 (S.D. Tex. 2014) (citing 15 U.S.C. § 1052(f)). Heritage alleges that it has used the website since at least 2008, (Am. Compl., Dkt. 6, at 4), which is at least some evidence that its dotcom mark has developed secondary meaning.

APR argues that the registered logo's stylized graphic features do not necessarily render the generic term "iVoterGuide" distinctive. (*See* Reply, Dkt. 10, at 4 (citing *Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 549 (4th Cir. 2004))). But that argument is premised on the resolution of fact issues against Heritage, which is inappropriate at this stage. Indeed, *Retail Services* was a summary judgment decision; it was only after consulting the evidence in the record that the court found that the defendant had overcome the registered mark's presumption of distinctiveness. 364 F.3d at 544–49; *see also id.* at 546 (concluding that the defendant's "one-sided evidence . . . rebut[ted] the presumption of non-genericness" that attached to the registered mark). At this stage, Heritage's

9

registration of the logo mark, which is "prima facie evidence" that the mark is distinctive, *Nola Spice*, 783 F.3d at 537, suffices to plausibly allege its distinctiveness.

Similarly, APR argues that "iVoterGuide" is not distinctive and that Heritage's doctom mark is not any more distinctive merely because ".com" is appended to the otherwise generic term. (Reply, Dkt. 10, at 5 (citing *In re Hotels.com, L.P.*, 573 F.3d 1300, 1304 (Fed. Cir. 2009))). Again, this argument depends upon the resolution of disputed facts. Whether a mark is generic is a question of fact. *Am. Auto. Ass'n (Inc.) v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1121 (5th Cir. 1991). And as APR points out, if a mark is descriptive rather than generic, it could develop distinctiveness through commercial use. (Reply, Dkt. 10, at 6 (citing *Booking.com B.V. v. United States Patent & Trademark Office*, 915 F.3d 171, 180 (4th Cir. 2019))). Heritage alleges that it has used www.ivoterguide.com commercially since December 2007 and it has since been used by over one million users. (Am. Compl., Dkt. 6, at 3–4). Exclusive and continuous commercial use of a mark for such a period of time can support a finding of secondary meaning. *T-Mobile US*, 991 F. Supp. 2d at 909. As it pertains to a cyberpiracy claim arising out Heritage's dotcom mark, Heritage has raised its right to relief above a speculative level. Heritage has adequately pleaded a cyberpiracy claim.

*b. Trademark Infringement Under Section 1114*

Heritage alleges that APR has infringed its "Marks"—defined as "the iVoterGuide and iVoterGuide.com trademarks"—through its use of the iVoters mark. (Am. Compl., Dkt. 6, at 4, 6-7, 8–9). But as APR points out, (APR Mem., Dkt. 7-1, at 14–15), Heritage asserts its federal trademark infringement claim under 15 U.S.C. § 1114, (Am. Compl., Dkt. 6, at 8), which provides a cause of action only for infringement of a registered mark. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 n.8 (5th Cir. 2010). Heritage alleges that it has only one registered mark—the logo mark, (Am. Compl., Dkt. 6, at 4)—and it does not allege infringement of that mark. Rather, it only alleges

infringement of its "Marks": its word mark and its dotcom mark. (*Id.* at 4, 6-7, 8–9). Because neither of those marks is registered, Heritage fails to state a plausible claim for relief under Section 1114.

*c. Unfair Competition Under Section 1125*

Heritage also alleges that APR's infringement of Heritage's trademarks violates 15 U.S.C. § 1125(a), (Am. Compl., Dkt. 6, at 9), which protects even unregistered trademarks. *Samara Bros.*, 529 U.S. at 210. But a trademark plaintiff only has rights in a mark if they have priority in that mark by using it in commerce before others do. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1299 (2015) ("One who first uses a distinct mark in commerce thus acquires rights to that mark."); *Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.*, 909 F.2d 839, 842–43 (5th Cir. 1990) (citation omitted) ("The first one to use a mark is generally held to be the 'senior' user and is entitled to enjoin other 'junior' users from using the mark, or one that is deceptively similar to it, subject to limits imposed by the senior user's market and natural area of expansion."). Heritage alleges that APR infringed its word and dotcom marks, which it first used commercially "as early as" September 2008. (Am. Compl., Dkt. 6, at 4). To the extent that its complaint can be read to allege infringement of its logo mark, Heritage told the United States Patent and Trademark Office that it first used the logo mark commercially in June 2015. (USPTO Certificate, Dkt. 6-1). According to Heritage's own allegations, each of these marks was first used long after APR launched www.ivoters.com in 2003. (Am. Compl., Dkt. 6, at 5). APR argues that Heritage has therefore conceded that its marks are junior to APR's iVoters mark. (APR Mem., Dkt. 7-1, at 13–14).

Heritage responds by pointing to its allegation that APR first used the iVoters mark in 2010, which would render it junior to Heritage's word and dotcom marks. (Resp., Dkt. 9, at 5–6). But it cannot be true both that (a) APR first used the iVoters marks in 2010, and (b) APR used the iVoters mark in its domain name as early as 2003. As this Court has previously stated, it "need not accept as true an allegation contradicted by other specific factual allegations within" a plaintiff's pleading.

11

*Rosas v. Bexar Cnty.*, 5:14-CV-1082-DAE, 2015 WL 1955406, at *5 (W.D. Tex. Apr. 29, 2015) (citing *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)). The Court takes as true the more specific of the contradictory allegations and finds that, for the purposes of resolving this motion to dismiss, that the iVoters mark was used commercially as early as 2003 when it was featured in APR's domain name. (Am. Compl., Dkt. 6, at 5). APR is therefore correct that, according to Heritage's own allegations, its marks are junior to APR's iVoters mark. (APR Mem., Dkt. 7-1, at 13–14). Heritage, as the junior user, does not have rights to enjoin the senior user. *Union Nat'l Bank of Tex.*, 909 F.2d at 842–43. It has thus failed to state a claim for relief under 15 U.S.C. § 1125(a). This claim must be dismissed.

### *d. State-Law Claims*

Finally, Heritage asserts causes of action against APR for Texas common law trademark infringement, common law unfair competition, and unjust enrichment. (Am. Compl., Dkt. 6, at 9). APR does not explicitly argue for the dismissal of these claims. Instead, it simply points out that "[t]he issues in a common law trademark infringement action under Texas law are no different than those under federal trademark law," (APR Mem., Dkt. 7-1, at 13), and applies the same arguments to Heritage's federal and state-law claims.

APR's position is not quite correct. It is true that the "elements in common law trademark infringement under Texas law are the same as those under federal trademark law." *Hot-Hed, Inc. v. Safehouse Habitats (Scotland), Ltd.*, 333 S.W.3d 719, 730 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). So, too, for common law unfair competition claims. *See Amazing Spaces*, 608 F.3d at 236 n.7 (citation and quotation marks omitted) ("A trademark infringement and unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions."). Thus, for example, Heritage must establish that its marks are eligible for protection under either Texas common law or federal law. *Id.* Likewise, Heritage must

12

establish that its marks have priority over APR's allegedly infringing marks. *See Cano v. Macarena*, 606 S.W.2d 718, 722 (Tex. Civ. App.—Corpus Christi 1980, writ dism'd) ("Generally, the enforceable right to a trademark . . . is acquired at common law by the one who first adopted and used it."). Accordingly, as discussed above, Heritage fails to state a claim for common law trademark infringement and unfair competition for the same reason as it failed to state a claim for federal unfair-competition claim: APR's iVoters mark has priority over all of Heritage's marks. (*See* Am. Compl., Dkt. 6, at 5 (alleging APR's use of iVoters in 2003)).[3] Heritage's state law claims must therefore be dismissed for failure to state a claim for relief.

### III. LEAVE TO AMEND

APR asks that the Court dismiss Heritage's claims with prejudice. (APR Mem., Dkt. 7-1, at 12). Heritage has already amended its complaint once in response to a motion to dismiss. (Am. Compl., Dkt. 6). Although Federal Rule of Civil Procedure 15(a)(2) permits a court to grant leave to amend pleadings and "evinces a bias in favor of granting leave to amend, it is not automatic." *Matter of Southmark Corp.*, 88 F.3d 311, 314 (5th Cir. 1996) (internal quotation marks and citation omitted). Among other things, "a party must 'expressly request' leave to amend." *Law v. Ocwen Loan Servicing, L.L.C.*, 587 F. App'x 790, 796 (5th Cir. 2014) (quoting *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003)). Even though "[a] formal motion is not always required," the requesting party must still "set forth with particularity the grounds for the amendment and the relief sought." *Willard*, 336 F.3d at 387. When a plaintiff fails to request leave to amend or indicate what might be added to the complaint if amendment were allowed, a district court may dismiss the cause of action with prejudice. *See Joseph v. Bach & Wasserman, L.L.C.*, 487 F. App'x 173,

---

[3] Although Heritage fails to state a claim for relief under Section 1114 because its word and dotcom marks are unregistered, Texas common law does not require that a mark be registered. *See Restrepo v. All. Riggers & Constructors, Ltd.*, 538 S.W.3d 724, 745 (Tex. App.—El Paso 2017, no pet.) (rejecting the defendant's argument that a common law trademark infringement claim must be dismissed because the mark was not registered because the court "found no authority holding that registration is a required element of the cause of action"). Nonetheless, its only allegation of trademark infringement is that APR infringed "the iVoterGuide and iVoterGuide.com trademarks" through its use of the iVoters mark, (Am. Compl., Dkt. 6, at 4, 6-7, 8–9), which has priority over those two Heritage marks.

13

178 (5th Cir. 2012). Heritage has neither requested leave to amend its complaint nor indicated what it might add to an amended complaint. (*See* Resp., Dkt. 9). The Court therefore declines to *sua sponte* permit Heritage to amend its complaint a second time.

## IV. CONCLUSION

For these reasons, the Court **IT IS ORDERED** that Heritage's motion, (Dkt. 8), is **GRANTED IN PART AND DENIED IN PART**. Heritage's motion is **GRANTED** insofar as the Court finds that Heritage's action is the first-filed case. But Heritage's requested relief—that the Court dismiss an action before a different court—is **DENIED**.

**IT IS FURTHER ORDERED** that APR's motion to dismiss, (Dkt. 7), is **GRANTED IN PART AND DENIED IN PART**. APR's motion is **GRANTED** with respect to Heritage's federal and common law claims for trademark infringement, unfair competition, and unjust enrichment. Those claims are **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(6). APR's motion is **DENIED** in all other respects.

**SIGNED** on July 23, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE